Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3856 | **DATE** | 1/17/2001 |
| **CASE TITLE** | McCook Metals vs. Alcoa | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/24/2001 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (192-1) to disqualify Jenkins and Gilchrist is denied. Motion (190-1) to modify protective order is granted for the reasons stated in open court. Enter memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 18 2001 date docketed | |
| | Docketing to mail notices. | | | 214 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | JAN 17 PM 1:12 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

McCOOK METALS L.L.C., )
an Illinois Limited Liability Company, )
) 99 C 3856
Plaintiff, )
v. )
) Judge George W. Lindberg
ALCOA, a Pennsylvania corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Alcoa, Inc. (Alcoa) moves to disqualify the law firm of Jenkins & Gilchrist (J&G) from further representation of McCook Metals L.L.C. (McCook) in this matter. It claims that after J&G began representing Alcoa, it accepted the representation of McCook in matters directly adverse to Alcoa in violation of its ethical obligations and duties.

The parties dispute whether Alcoa was actually a client of J&G at the point J&G began representing McCook. Steven Thompson, formerly with the law firm Hedlund, Hanley & John (HH&J), has represented McCook as its outside general counsel since 1992. Apparently, most of Thompson's work for McCook had centered on disputes with Alcoa, including the instant lawsuit, which was filed in June 1999 and on which he is designated lead trial counsel. Edward McCormack, another former partner at HH&J, is also designated counsel for McCook on this matter. In May 2000, Thompson and McCormack joined J&G, presumably bringing their

representation of McCook with them.[1] HH&J is in dissolution and many of the attorneys previously with that firm who worked on this litigation are now at J&G.

On March 24, 2000, Edward Levine, an attorney and the intellectual property director at Alcoa, called Raymond Van Dyke, a J&G partner in the firm's Dallas office with whom Levine had had no previous contact, concerning an Internet venture that Alcoa was planning and for which Alcoa would require legal counsel. In a later telephone call, Levine requested materials covering Van Dyke's as well as the firm's background and experience. Van Dyke mailed those materials to Levine on approximately April 3, 2000. Van Dyke and Levine spoke more than once over the telephone and planned a "strategic meeting" for May 24, 2000.[2] Levine faxed Van Dyke background material on the Internet venture although Van Dyke claims that these documents contained only publicly available information to assist his preparation for the May meeting. Van Dyke considered the May 24 meeting a "beauty contest" at which he would present his credentials and experience to Levine.

At Levine's instruction, David Pearce-Smith, an attorney at Alcoa, contacted Van Dyke on April 26, 2000, and requested that Van Dyke perform a trademark search related to the forthcoming Internet venture. Although this assignment was not the business method patent work that Van Dyke and Levine previously discussed, Van Dyke agreed to complete the project,

---

[1] When discussions between J&G and Thompson began April 3, 2000, Thompson asked whether Alcoa was one of the firm's clients. He was told that Alcoa was not a client.

[2] Van Dyke maintains that the information Levine provided during this period was background information concerning Alcoa's new business venture and was not privileged or confidential. Because it does not wish to waive its attorney-client privilege, Alcoa will not reveal the substance of the analysis and advice it claims it received from Van Dyke.

as requested, by April 28. When sending the results to Pearce-Smith on April 28, Van Dyke asked if he should continue the project research. Pearce-Smith responded that no further assistance would be necessary.

Three days later, on May 1, 2000, Thompson and McCormack joined J&G's Chicago office, bringing their representation of McCook–as well as this lawsuit–with them. On May 8, 2000, McCook (represented by Thompson) filed a second lawsuit against Alcoa, this one in Washington, DC. On May 10, 2000, Russell Porter at Alcoa contacted Van Dyke about Thompson's/J&G's representation of McCook. Two attorneys at J&G informed Porter on May 12, 2000, that J&G would accept no further work from Alcoa.

To determine whether disqualification is appropriate, the court must determine 1) whether an ethical violation actually occurred; and, if so, 2) whether disqualification is an appropriate remedy. *Guillen v. City of Chicago*, 956 F.Supp. 1416, 1421 (N.D.Ill. 1997).

Alcoa asserts that it is clear that the first prong of this test is satisfied and that J&G disregarded its duty of loyalty when it decided to represent McCook in an action directly adverse to an existing client. Local Rule 83.51.7(a), which addresses conflicts of interest, states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after disclosure.

Alcoa claims that J&G's representation of the company began April 3, 2000, when Van Dyke sent his resume and materials regarding his hourly rates to Levine. Because Levine stated that at that point he anticipated an on-going relationship with Van Dyke and J&G, Alcoa asserts

that representation began and continued without termination on that date. Alcoa accuses J&G of subsequently dropping Alcoa as a client because McCook will "apparently" be a more profitable client for the law firm. It refuses to consent to J&G's representation of McCook.

J&G denies that Alcoa retained it in early April 2000 and states that the communication between the two entities was merely business development Van Dyke was conducting with the hope of turning Alcoa into a permanent client. J&G claims that it therefore represented Alcoa only from April 26, when Pearce-Smith requested that Van Dyke perform a trademark search, until April 28, when Pearce-Smith informed Van Dyke that no further assistance on the project would be necessary. J&G therefore asserts that because it had no on-going relationship with Alcoa, the attorney-client relationship terminated on April 28. *Alexander Proudfoot PLC v. Federal Ins. Co.*, 1994 WL 110531 (N.D.Ill.) (if an attorney is hired only for a discrete project, the relationship ends when the project ends whereas when an attorney is hired for a number of projects over time, the relationship ends only when the attorney has formally withdrawn). McCook claims that it therefore had no attorney-client relationship with Alcoa on May 1, 2000, when Thompson and McCormack joined J&G, or on May 8, 2000, when McCook filed the second lawsuit against Alcoa.

The record simply does not support Alcoa's contention that it retained Van Dyke, and thereby J&G, before April 26, when it asked him to perform a trademark search. Although Levine indicates that he "considered J&G to be engaged" after he received Van Dyke's background materials and hourly rates in the mail in early Aprill, he fails to allege a single fact indicating that he conveyed this understanding to Van Dyke. "An attorney-client relationship arises only when both the attorney and client have consented to its formation." *Altieri v. Estate*

-4-

*of Snyder*, 633 N.E.2d 711, 716, 262 Ill.App.3d 427, 436 (2d Dist. 1992). Levine had not retained Van Dyke to perform a particular legal assignment, and the two had planned to meet to discuss Van Dyke's credentials. The communications between the parties clearly appear to be business development and an attempt to acquire a new client on the part of Van Dyke, and the evaluation of a new attorney on the part of Levine. As a result, the court finds that on May 1, 2000, when Thompson and McCormack joined J&G, Alcoa was not a current client of the firm.

Nor would the court disqualify J&G even if it did find that the law firm's representation of Alcoa began in early April as opposed to April 26. Contrary to Alcoa's assertion that disqualification is a "normal consequence of an ethical breach," disqualification is actually an extreme measure that should be used only when necessary. *Cromley v. Board of Education*, 17 F.3d 1059, 1066 (7th Cir. 1994). The cases Alcoa cites as support, by its own description, are "hot potato" cases involving situations where a law firm drops a long-standing client when a more lucrative client appears on the scene. *See, e.g., Alex Munoz General Contractor, Inc. v. MC3D, Inc.*, 1998 WL 831806 (N.D.Ill.). Alcoa does not explain why McCook would actually be a more profitable client for J&G to have, and the record contains no indication that this would actually be the case. In this situation, McCook's existing counsel joined a law firm that had only recently begun performing any work for the client with adverse interests. This occurred despite the precautions Thompson and Van Dyke took to ascertain whether a conflict existed. J&G has screened Van Dyke from sharing any information regarding Alcoa with anyone at J&G who is involved in representing McCook. Nor is there any allegation that confidences have already been

breached.[3] On the other hand, disqualifying J&G would result in McCook losing a team of its long-standing counsel of choice in the midst of lengthy and contentious–not to mention costly–litigation, despite Alcoa's inability to establish how it would be harmed by such representation. Disqualification is a drastic measure, but if the court took such action here, it is unlikely that there would ever be a situation where disqualification would not be mandated.

Because the court has found that Alcoa was a former client of J&G's on May 1, 2000, when J&G began representing McCook, it must look to L.R. 83.51.9, which addresses conflicts of interest with a former client. The rule states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.

Alcoa claims that a "clear nexus" exists between the nature of J&G's representation of Alcoa and McCook because McCook has alleged in the instant litigation that Alcoa is violating antitrust laws and because the CEO of McCook has recently stated that with Alcoa's Internet venture, that company is "poised to expand its dominance" of the aluminum industry. Alcoa claims that because the trademark search Van Dyke conducted involved the Internet venture, which McCook has criticized, his representation of Alcoa is substantially related to Thompson's representation of McCook. The court fails to see the connection. The trademark search Van Dyke conducted was not the same or substantially related to the patent infringement or antitrust issues involved in the instant litigation, and the fact that the matters both involve the aluminum

---

[3] Again, Van Dyke maintains that for his preparation for the meeting with Alcoa, he relied on public information and did not have access to privileged or confidential materials.

industry in some general manner does not establish that a clear nexus exists between them. The court therefore finds that Rule 83.51.9 does not bar J&G from representing McCook.

For these reasons, the court denies Alcoa's motion to disqualify Jenkins & Gilchrist from representing McCook Metals.

**ORDERED:** The court denies Alcoa's motion to disqualify Jenkins & Gilchrist.

ENTER:

George W. Lindberg
United States District Judge

DATED: __JAN 1 6 2001__